May it please the court, my name is Robert Loeb and I represent two arms of the government of the Republic of India in this case, the Indian Institute of Technology of Kharagpur and the Technology Incubation and Entrepreneurship Training Society. And just as a US federal agency would generally be immune from suit in the courts of the Republic of India, so too are these two arms of the Indian government generally immune from suits in the courts of the United States absent of showing that one of the exceptions to immunity under the Foreign Sovereign Immunity Act applies in this case. Is that a defense that has to be raised? A defense that needs to be raised? Yes, Your Honor, as to the defendants need to raise the foreign sovereign immunity. This is not a question, though, as to whether the plaintiffs will have their day in court or the question of the defendants here escaping liability. As the district court recognized, the courts of the Republic of India are an appropriate forum, as the court found at page 34 of the excerpts of record. With respect to IIT, they made the motion with respect to the first amended indictment, then there was a second amended indictment, and then there was a third amended indictment, and there was no motion made on sovereign immunity grounds with respect to the third amended indictment. Is that correct? It's correct that we have before us, there's a ruling on IITK's motion to dismiss based on that immunity in regard to the first amended complaint brought by Ms. Farhan. That's not operative in this case anymore. I mean, what's operative is a third amended complaint, and they did not raise the defense of sovereign immunity with respect to that complaint. Well, first, it's the society made a motion as to that, and that's before the court. I'm not arguing about this. I'm not. Where a party does make a motion and it's ruled upon, even if they don't take an immediate appeal, they have the right to still appeal that denial, that motion to dismiss. From a final judgment. From the final judgment. Well, but that's not what you're doing here. Your IIT is attempting to piggyback on a collateral appeal of society. Correct? Well, that is correct, Your Honor. And do you have any authority that they don't have to appeal within 30 days the way the society did? There's two grounds for the jurisdiction. First one is an appeal as a right, and one is pendent party or pendent appellate jurisdiction. Pendent appellate jurisdiction deals with pendent claims. Also pendent parties, Your Honor. Do you have a case that tells me that a party who did not appeal a preliminary injunction when they had a collateral appeal right and didn't do so in 30 days can join in an appeal by somebody who does have a timely appeal? Do you have a case on that, on the Ninth Circuit? In the Ganwich v. Knapp case at 319 Fed Third, which is at 1115, it was a good example of, in that case, there were individual Federal officials or State officials being sued in that case who had a right to appeal. And this Court said that even though the county did not have a right to appeal and could not bring appeal of its own right, this Court could still hear their arguments and claims as a matter of pendent party jurisdiction. So you can have a ---- Optional to the court. It's not a right to appeal. It's something the Court could choose to take up. That is discretion. So we have two arguments. One is the pendent appellate party jurisdiction, which is, like you said, optional. And we think here where, especially as to the direct effects test, as to the society and IATK, the exact same rationale is being applied. So it makes perfect sense to hear both of them together. As to appeals of right, as the Seventh Circuit recognized in Rubin and in Ware, that when you don't take an immediate appeal from a collateral order such as this, which is a denial of immunity, you don't lose a right to appeal. Usually, you can appeal upon final judgment. But as the Seventh Circuit and Judge Posner explained in the Weir case, it can also be appealed upon another appealable order in the case. And here we have another appealable order, which is the society's appeal. This Court had similar reasoning in a case called Gahn v. First State of Insurance, which is 871 Fed 2nd 863. So, but clearly there's to me there's a broader question here. It's not as if they didn't make a motion with respect. They made a motion with respect to the first amended complaint. Then there's a third amended complaint, and they make no motion. The third amended complaint is the operative complaint. I don't understand why they haven't essentially waived their right to any kind of an appeal. I don't know why you're assuming that they can appeal from the denial of a motion to dismiss the first amended indictment complaint, which is not no longer in the case. Again, I think the law is settled that you don't lose your right to appeal. If the Court was wrong in rejecting the motion to dismiss, there shouldn't have been an opportunity to amend the complaint at all. My understanding is with the first amended complaint, they made a motion to dismiss on the grounds of sovereign immunity. They didn't appeal. I agree with you that if the first amended complaint had remained the operative complaint in the case, they could have appealed from a final judgment. The first amended complaint did not remain as the operative complaint. What was the operative complaint was the third amended complaint, as to which they had made no motion. Now, I don't know why they didn't. And, you know, that doesn't appear to me, you know, it just doesn't make sense to me. The district court's rationale for the direct effects here was still as a holding of the court and would apply also upon the second amended complaint and the third amended complaint as to the IITK. And they would simply be reiterating the same arguments as to that, that the district court could only assume the IIT still had this defense. I mean, they made it as to the first amended complaint. It's out of the case. And what you have is a third amended complaint where they never raised the defense. I mean, is it your theory that when an amended complaint is filed, as it was in this case, that all the defenses you raise in the first amended to the first amended complaint apply automatically to the third? Well, here, where especially as to the joint venture, the district court didn't reject the joint venture claim. It found that it was a waiver of sound immunity as to that claim due to the direct effects as to the profits to be paid to Ms. Farhang in the future. And so that holding would still be applicable to IITK as to the second and to the third amended complaint, Your Honor. But the party, they haven't waived the right in their answer to the third amended complaint, they still assert their immunity. They haven't waived their immunity here. The question is how many times do they need to beat a dead horse here in this case? Well, the waiver was called it procedurally forfeited instead of waivered to be technical. But they didn't raise, they didn't. It seems to me that when you're a party in a case and there's a third amended complaint filed, you file an answer. And the answer that you file raises whatever defenses you want to raise. And that's the operative complaint. And the answer there, they do raise the immunities, the foreign sovereign immunity in that case. IIT does? And I think both parties, the society and IITK, the motion to dismiss was brought by the society at that point. But IITK has preserved its claim to sovereign immunity throughout this case. In any event, this Court can reach and should reach the direct effects ruling as to the society. And that ruling will be binding upon the district court and will then be binding upon it to apply that holding as to IITK. So it makes sense for this Court to hear it as to all the parties. But certainly the society's argument, rather, is before this Court. So turning to the direct effects argument, the district court found here that there was some oral agreement with a future promise to pay profits to be generated by this joint venture. But under a controlling supreme court and circuit precedent, such loss of an opportunity      It's not a direct effect. It's not a direct effect. It simply does not qualify to be a direct effect. And to the extent there was any ambiguity about this at the time when the district court ruled on this, those ambiguities have been wiped away by this Court's September 2012 Tarankian decision. So in Tarankian, we don't have an oral agreement. We have a written contract. And one of the key terms of Tarankian was a payment was to be made to a bank in New York, the BNP bank, to be paid by letter of credit. But this Court said the lack of that payment to the bank was not a direct effect because the breach in that case was the failure of the Iraqi government to deliver oil to the plaintiffs. Kennedy, you mentioned the supreme court case. What case precedes Tarankian or does Tarankian rely upon for its rule? Weltover is what's what is the key supreme court case, and which is what Tarankian is relying on. Say it again. Weltover. Weltover. Okay. So in Weltover, the Court there adopted the immediate consequence test. It's not just enough to have some direct effect, anything. It has to be connected to the alleged breach of contract. It has to be connected to the alleged tort, and it must be an immediate consequence of those of the breach or of the tort. And in the Weltover case, the Court said it met that standard because the ultimate contractual obligation in Weltover was to turn over bonds to a particular bank in the United States. And when they didn't do that, they breached the contract, and it was an immediate consequence that the money was not delivered. Well, in contrast, in Tarankian, the breach was the failure to deliver oil, and this Court called it a ripple effect, the fact that the money was not paid into the U.S. bank. So to Tarankian distinguished Weltover. It didn't rely on Weltover. Well, it relied on the rationale of Weltover. Scalia, did you have a Supreme Court case upon which Tarankian did rely? That Tarankian did rely on? There are others, but I think the Weltover was the key, the key test of the claim. You've explained your view on this. Thank you very much. So in Tarankian, it said there was additional steps beyond the failure to deliver oil, which led to the money not being delivered. Well, here in this case, we have many, far more, many more steps that preclude a finding of direct effects. We had a joint venture which was being conceived. That joint venture would have had to have produced some technology. That technology would have had to have been successfully produced. It would have had to have been marketed. It would have had to have been known. Well, what about the claims other than those deriving from the allegation the joint venture failed because of misconduct? What about the claims about misappropriation of trade secrets and the reduction in value of the intellectual property in the United States? Well, neither of those were raised in the district court as direct effects here. So they've been waived. The only thing argued in the district court regarding a direct effect was the loss of property. Well, I don't know how you can say they've been waived, because the district court decided there were direct effects. So the plaintiff's burden is burden-shifting. And they won. And so why can't they bring up more reasons here? Well, because if they raise it, then there's an opportunity to respond. There's a process. I'm inviting you to respond. Well, respond with evidence or respond with the – it's their obligation to come out and say what the direct effects are. So you can tell me that they don't have evidence. Right. If that's the point, you can tell me that. But I have a little trouble understanding your waiver argument. Well, in their complaint, the only thing they allege is the – and all their damages are to the $30 million lost profit from not doing business with the Indian Railroad. There's nothing in the complaint attributed to a diminishment in value of the technology or from the loss of failure return. Moreover, the NDA, which they rely on for the failure-to-return claim, of course, doesn't apply to the society at all, as the district court held. But also, as to the return obligation in the NDA, it doesn't specify the United States as the place of return. You could – they could return any of the property to an agent of Ms. Farhang or M.A. Mobile in India. Where did it originate from? The technology which where it was sent. That's not entirely clear in the record. We know M.A. Mobile is incorporated in Dominica, and we know that Ms. Farhang is in California. But it's not clear as to – I assume it was sent from Ms. Farhang in the United States to the parties here. But the question of the return is returning it to their ownership. Also, under Ms. Farhang's declaration, as to the essential terms of this joint venture, was that the joint venture was going to own the technology and not her and not M.A. Mobile. So if we do credit her, her declaration at page 214 of the access of record, they don't even own the property to make a claim of diminishment of value. They don't even own the property to make a claim of – How could that be if the joint venture never happened? Well, their claim is – turns on that there being a joint venture, right? So if you credit her that there is a joint venture and that the essential terms are that she gets his profits, you can also credit her as to the other term. We reject both, but if you're going to – if the district court is going to credit I simply do not understand the logic of your argument that there can't be a claim for misappropriation of trade secrets because the trade secrets belong to a joint venture that never happened. Your Honor, I – The misappropriation argument, as I understood it, was that the people that they were going to joint venture with went off and used the trade secrets and intellectual property for some other purpose. The defense to that can't be there could have been a joint venture. Is there a defense to that, or are you just saying that's not really part of the claim being asserted by the plaintiffs? Well, they don't assert a damage from the misappropriation or for diminishment of value in their complaint, and they didn't make that argument in the – Did he move to dismiss those counts of the complaint on the basis there was no injury alleged? We did make those arguments, but as to the direct effects, their obligation is to do more than just make allegations. So the district court made two aspects. It said it was sufficient on the pleadings, but at the FSIA stage, the immunity burden to actually prove the direct effects and come up with evidence of the direct effects. And here there was, especially as to the profits, substantial documentation which was issued and submitted by the parties. There were letters of intent. There were e-mails and whatnot. And none of them – none of them are in regard to the claim of profit that Ms. Farhang put in her complaint and into her declaration. And as if to the extent that there wasn't an agreement regarding profit, you would expect that there would be some details about that, about how often the profit would be paid. It would be annually, every month, on a basis. I don't understand what you're telling me. What's it connected to? I mean, I was asking you about a claim for misappropriation of trade secret. I was saying there was no – nothing in the – in their proof regarding that, and there's also nothing in their proof to support their claim of lost profit. I'm sorry if I transitioned. Well, you transitioned to a point where you're kind of out of time, so you shouldn't be transitioning to a new point. Is there anything else you have to say to us? No, Your Honor. Thank you. Thank you. Good morning, Your Honors. I'm colorblind, so I'm having a little bit of difficulty seeing the clock, but I'll try to. The green's on top and the red's below. Thank you. May it please the Court. Good morning. Sanjiv Singh for Plaintiff Appellees Mondana-Farhang and MA Mobile Limited. With some latitude from the Court, I actually think I'll be able to address the points raised by appellants as well as some of the questions you raised, unfortunately, in the order that I was planning on presenting. Before turning to the merits, may it please the Court, I would like to just very briefly address the standard of review, which I think actually can be dispositive in this case to a large extent. We take exception to the standard of review articulated by appellants. We of course agree that the standard of review with respect to conclusions of law is de novo, but with regards to the factual predicates upon which the conclusions of law are based, we believe it's clear error and we believe that the Court below got it right in its factual determinations. Now, our position- But there's also a legal element involved, particularly with regard to what constitutes direct effects in the United States. Absolutely. Is that a question of law, fact, or both? Absolutely. And actually, that's relevant to some of the questions you were asking about some of the facts which weren't necessarily focused upon by Judge White, but which you are actually free to focus on, provided they were on the record and available to him. So I agree with that. The- Why don't you answer Judge Glipson's record question? I'm sure he's agreeing with me. I'm not sure what the agreements do. The agreement is I agree with his point. Is that a mixed question of law and fact? Well, with regards to FSIA, it is a question of law. It's de novo review. But with regards to the factual determinations made upon which that conclusion depends, so, for example, with regards to direct effect, the payment obligations that the court below concluded that there were payment- There's no dispute about that, is there? Say it again. There's no dispute about that. Well, I agree that they- So why is it a question of law both ways? Pardon me? How can the -? Upon what wisdom of the district court should we rely in determining where the money should have been paid? And there's no dispute as to that, is there? Well, the appellees were disputing that there wasn't actually an agreement with regards to the joint venture. But if there was an agreement, it was to be paid to Ms. Farang in California. Exactly. I agree. So why is that a question of fact on which we should use a clear error analysis? Well, to be honest, I don't think it actually matters- Then let's proceed that way. Yes. I don't think it ultimately matters. I think in this case you can apply it de novo, and I think we come to the same result. So the court below found correctly that defendant-appellant IIT had entered into a private commercial transaction with plaintiff appellees, where it expressly agreed to litigate any disputes in California. This finding is based on the complaint? This is based on the complaint. Now, you had raised the question of the Third Amendment complaint versus the First Amendment complaint. At the time that the district court applied the waiver analysis, it was relying on the First Amendment complaint as well as evidence presented by Ms. Farang through affidavit, which include the attached NDA, which they executed. So that NDA contained the waiver clause. It included an express U.S. choice of law, venue, and jurisdiction. There was no doubt that IIT executed that agreement, thereby waiving its claim of sovereign immunity under 1605a1. The waiver went to each of the relevant claims, which at that time included the breach of the NDA, breach of an alleged joint venture, and the misappropriation of technology. Thereafter ---- I'm not sure that last statement is a given. I can understand the nondisclosure agreement reaching the nondisclosure and potentially misappropriation claim. How it gets to the failure to form the joint venture, I have a harder time understanding. Because the joint venture actually involved the core technology that was covered by the NDA. Fine. But you cannot disclose and also not form a joint venture. But one of the key obligations of the joint venture, and actually the court below expressly analyzed this, and in the related, at the time that the motion to dismiss on sovereign immunity was being argued, there were also related, there were motions with regards to the actual pleadings. And one of his conclusions was that the NDA obligation actually continued through the joint venture and was a key part of it, because part of the viability of the joint venture depended on keeping that technology trade secret, keeping it confidential. Are you saying that by executing the NDA, they obligated themselves to sign a joint venture? No. No. What I'm arguing is that the confidentiality obligations of the NDA continued through the joint venture. The joint venture agreed to not. But that doesn't justify bringing the claim for the damages that weren't realized because the joint venture didn't go forward. Well, that doesn't seem connected to the NDA. So I would actually like to address this question of whether or not the joint venture went forward. But just to answer your preliminary question, the damage with regards to the fact that the joint venture was abandoned was not just the matter of that they abandoned the joint venture and therefore there weren't payment obligations. In abandoning the joint venture, they breached the NDA and we had alleged and evidence showed that they disclosed it to third parties. And in disclosing it, they affected the value of, as you pointed out, the value of the intellectual property. So it is not just about the payment obligations. It is about the value of the intellectual property. I will ---- Well, all of that could be pursued based on a nondisclosure count. But you've got multiple counts in the complaint. Right. And the question I'm trying to pose, I don't understand how some of these counts relate to the NDA. I can understand how you can try to argue damages, a theory of damages under a nondisclosure claim. But I don't see how you can get to the joint venture claim. Because the NDA, and again, as the Court below concluded, the NDA obligation. Remember that the joint venture agreement did not replace the NDA. The NDA still continues. All that tells me is that you can pursue this claim under a nondisclosure theory. That doesn't tell me how you can pursue this claim under an obligation to form joint venture theory. But it was agreed upon as one of the terms of the joint venture that the confidentiality of the technology would be maintained under the NDA. And in fact, evidence of that, and this was submitted in the affidavits, was that it was conditioned that anyone who would see the technology would execute the NDA. And you'll see in the excerpts of record that the agent from IIT repeatedly says to Ms. Farhang, any time he was going to show it to another party, yes, I'll have them execute the NDA. And that was during the joint venture, as it was operating, as they were developing the technology. And is that disputed? I mean, I'm trying to understand how this, how the facts get developed in this case. So with regards to, so with regards to the, and I'd like to address this question of the joint venture, because I think this, this is a point that the district court did not have to get into, because it made its ruling on direct effects based on, and it relied on cases like DeSanchez and said. But you're not trying to argue to us right at this moment. No, no. What I'm trying to argue is that the joint venture was very much a real joint venture. It was not just negotiations. There was active development of technology. There was agreement with regards to what the interests would be, how the technology would be developed. They built a demo, and right on the eve that the demo was going to be marketed, they abandoned the joint venture. It spanned two years, not two months. And I wanted to just cite to you from the excerpts of records so that you can review later evidence of that, because I think that gets. Well, maybe you can tether this to what your legal argument is. I mean, you started off by talking about not the direct effects, not the commercial exception, but a waiver argument. Sure, and I'm happy to go back to the waiver argument. Well, I'm not urging you there. I was puzzled as to why you started there, because the district court's ultimate decision was based on the commercial effects, and because the waiver argument appears to be different with regard to the two different defendants. Do you want us to pay more attention to waiver or commercial exception? Actually, with regards to waiver, so let's deal with IIT first to answer that question. With regards to IIT in the 2010 order, the district court relied on waiver and then an alternative relied on commercial activity and direct effects. The court concluded that IIT executed the NDA and that the breach of the NDA linked to all three of the operative claims, which was the breach of the NDA, the breach of the joint venture, and the technology misappropriation. He then said, however, there was a question about third-party beneficiary status. He ruled on that and said that plaintiff appellees had offered evidence that she was a third-party beneficiary, but they need to amend the complaint, which she did. Now, turn to the 2012 order. In the 2012 order, the court didn't rely on implied waiver analysis. Now, we take issue with that, but it doesn't matter for the final outcome, because what they did rely on was direct effects with regards to the Incubation Society. Keep in mind that this was not identical facts. The court was not just rubber stamping the decision it had made before. The court looked at the role of the Incubation Society in the joint venture. The fact that the Incubation Society had come in midway through the joint venture because of this technicality, and then served as the functional entity moving forward, and this was from about 2005 through 2006. The fact that the court rejected the waiver analysis in that order, but found it in the IIT order, shows you that the court was looking very carefully at those facts. So. Could I ask you one more question? Sure. Did IIT raise as an affirmative defense to the third amended complaint the issue of immunity? I know they didn't make a motion. So when they answered the third amended complaint, they did, as they're required to do, but they did not make any kind of motion. And in fact, actually, they proceeded, filed multiple 12B6 motions. They tried to have the case stayed. They argued venue, and we had two years of intensive motion practice, and it wasn't until the eve of discovery when, as Judge Bea pointed out, they attempted to piggy back the IIT appeal on top of the Tietz appeal. Why would IIT refile a motion to dismiss on the FSIA claim when it had already been turned down by the court? Well, what they should have done, and that is a valid question, and what they should have done, if they had issue with the sovereign immunity, they should have appealed it at the time that the 2010 order was issued. They had 30 days to do that. So you can see that they didn't waive the point by not removing. No. But they waived their right until after final judgment. Right. Certainly. Okay. So I would like to. Now that it's here, is there a reason for us not to pay attention to it? I mean, we're here. We're here because of society. But is there a reason not to pay attention to the same argument to the extent that applies to the Institute? So in other words, to rephrase your question, correct me if I'm wrong. If it's discretionary, if it's the pendant jurisdiction argument, is there a reason we shouldn't exercise discretion to consider it? There is. And in fact, the pendant jurisdiction, and I think Judge Bea pointed this out, and maybe it was you, Judge Clifton, but in either case, pendant jurisdiction is a discretionary jurisdictional case. So why shouldn't we exercise discretion? And Swint really makes it clear, in all the litany of cases that followed in this circuit, the 2012 order and the 2010 order are distinct. They are not inextricably intertwined. Disposition of one order does not resolve the other. And I'll illustrate this. First, if you look at the legal reasoning, in the 2012 order, as I stated, the court rejected implied waiver analysis, but applied direct effects analysis to the incubation society, focusing on the incubation society's role in the joint venture. In the 2010 order, the court accepted waiver analysis for IIT, where there was an actual written copy of the NDA executed, and applied direct effects analysis to IIT based on its distinct participation before incubation society even existed. Now, what appellants have tried to argue in their briefing and here today is that they were inextricably linked because of the common factual nexus. But as I'm sure you're aware, California v. Campbell, 98, Cunningham-Gates, Meredith v. Oregon, 2003, common factual nexus is not enough. And in fact, actually, if you look at some of the subsequent cases where the court did find pendant jurisdiction, they involved issues where, for example, you had class certification and orders affecting a class. There you could see how those two issues were both legally and factually intertwined. Here that is not the case. So I would submit to you that, actually, while the court may have discretion, I don't believe that pendant jurisdiction should be applied. And just while we're on that, similarly, Eisen and Rubin, I think, are factually distinguishable. I would even submit that Eisen is its own unique circumstance. Really, the appellate court retained jurisdiction. The district court gave instructions to hold off on an appeal until it had ruled on the cost allocation issue. And to the extent that was argued. Before your time is entirely gone, let me try to think. And we'd help leave you there. But let me switch gears for a second. And let me go directly to the commercial activities exception. Yes. And the district court's ruling that there were direct effects in the United States here. Yes. And subsequently, we have our decision in Terankian. But it seems to me the district court's ruling has the effect of saying if there's a U.S. participant or partner or joint venturer or a U.S. owner who's going to receive profits, if any, that's enough for direct effects. In light of Terankian, can that position survive? Or why should it survive? That position, I think, should be elaborated upon. And I think the district court did get it right. In Terankian, just to clarify, the plaintiff appellee was a Cypress company, no connection to the United States. It contracted to purchase oil from Iraq where title would pass outside the United States. Iraq or Iran? Iraq. Iraq. Where title would pass in Iraq or Turkey, not the U.S., and the brokerage fees, which were lost by the plaintiff, were to be paid outside the U.S. The purported direct effects in Terankian, the inability to make planned sales of oil in the United States, and the failure of the funds to reach a third-party escrow account this was part of the U.N. Oil for Food Program, had nothing to do with the actual core obligations. Now, let's contrast that, and to answer your question, with what happened here. In this case, the actual core agreement of the joint venture was with regards to allocation of equity interests, and those equity interests had profit rights. And those profit rights were to be paid to each participant in their respective jurisdictions. For Mondana-Farhan? There were profits. However, and this is the last point I would like to make to you because I know I am short on time, if there is any doubt as to whether or not there was an actual joint venture here, and that the imminence of payment is a question, which I think is the implied part of your question, I direct the Court to review. This is on the October 10th motion for summary disposition. We had included there a sealed exhibit, and that sealed exhibit includes an e-mail dated April 6, 2006. Now, on the actual notice of seal, it is exhibit B, but on the reference, it's exhibit E. In either case, please refer to that. That is on the record before the Court. And in it, you will see the first e-mail, as well as attached pages, evidence of the fact that this joint venture had been ongoing for two years. And to quote, the participant says, bottom line is, this is a sealed document that was submitted to the Court. I'm actually quoting from a non-confidential portion. Okay. Well, in any case, the Court can review this. But I urge you to look at this because this will put to – this is the real deal. This will put to rest any doubt you have whether or not there was an actual joint venture, whether or not there was imminence of payment, if you look at this. Are there any other questions? Roberts. Thank you. We thank both counsel for your helpful arguments. I don't think there's any time left, is there? Then we'll submit this case.
judges: Korman, Clifton, Bea